UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-60774-CIV-COHN/SELTZER

JEFFREY DOWLING,

    Plaintiff,

v.

CITY OF FORT LAUDERDALE, FLORIDA,
and MIKE FREELEY,

    Defendants.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff Jeffrey Dowling's Motion for Summary Judgment [DE 23] ("Plaintiff's Motion") and Defendants City of Fort Lauderdale, Florida and Mike Freeley's Motion for Summary Judgment [DE 29] ("Defendants' Cross-Motion"). The Court has considered the motions, the parties' responses and replies, the record in this case, and is otherwise fully advised in the premises.

### I. BACKGROUND

On January 6, 2009, an unidentified agent of the Drug Enforcement Agency ("DEA") contacted Detective Edgar Cruz of the Fort Lauderdale Police Department ("FLPD") to request that FLPD stop a certain Chrysler Pacifica van that DEA suspected of carrying a kilogram of cocaine. DEA had placed a tracking device on the Pacifica, and the agent gave Cruz the tracking information. See Plaintiff's Statement of Undisputed Material Facts [DE 4] ("PSUMF") ¶¶ 2, 6; Pl.'s Ex. 5, Fuller Dep. [DE 24-5]

("Fuller Dep."), 4:4-5:9.  Detective Cruz then gave this information to two other FLPD officers, Sergeant Gerald Fuller and Detective Mike Freeley.  See Fuller Dep., 6:2-3; Pl.'s Ex. 3, Freeley Dep. [DE 24-3] ("Freeley Dep."), 4:3-12.  Sergeant Fuller was able to track the Pacifica to Deerfield Beach, Florida.  See Fuller Dep., 4:4-5:9.  He relayed the information to FLPD Officer Shannon Dameron, who stopped the Pacifica in the parking lot of a Kwik Stop convenience store in Deerfield Beach.  See PSUMF ¶ 6; Pl.'s Ex. 4, Dameron Dep. [DE 24-4] ("Dameron Dep."), 4:14.  While sitting in the Kwik Stop parking lot, Dameron observed a car pull in next to the Pacifica.  See PSUMF ¶ 10; Dameron Dep., 7:3-11.  Mary Daniels and Plaintiff Jeffrey Dowling stepped out of the car and walked toward the entrance of the convenience store.  See PSUMF ¶ 11. Dameron claims that he saw Daniels and Dowling briefly speak to the driver of the Pacifica, and that he thinks he heard Daniels ask the driver about his mother. See Dameron Dep., 14:13-20.  Dowling denies that he or Daniels spoke with the driver. See Pl.'s Ex. 2, Dowling Aff. [DE 24-2] ("Dowling Aff.") ¶ 11.  Dowling and Daniels then entered the store to purchase lottery tickets.  See PSUMF ¶ 16.

　　　Freeley arrived at the Kwik Stop shortly after Dameron, Dowling and Daniels. See Fuller Dep., 10:4-18; Dameron Dep., 4:15-25.  When Freeley arrived, Dameron informed him that he had stopped the Pacifica and that Dowling and Daniels had spoken with the driver.  Dameron also told Freeley that "Dowling was possibly involved" with the driver.  See Dameron Dep., 9:19-24; Freeley Dep., 6:2-21.  Freeley then entered the store and ordered Dowling to put his hands behind his back.  See Freeley Dep., 6:22-25; Dowling Aff. ¶ 17.  Dowling cooperated, and Freeley handcuffed him and escorted him from the store.  See Freeley Dep., 6:22-25.  Freeley then frisked him, but

2

did not find any weapons or contraband.  See PSUMF ¶ 25.  At the time that Dowling was frisked, there were at least six FLPD officers at the scene.  See id. ¶ 27.  Dowling was detained in handcuffs for approximately twenty minutes, and was then released without arrest.  See id. ¶¶ 30, 32.  The driver of the Pacifica was not ultimately handcuffed or arrested.  See id. ¶ 28.

On April 30, 2012, Dowling filed suit against the City of Fort Lauderdale, Florida, ("Fort Lauderdale"), as well as several FLPD officers.  See Compl. [DE 1].  However, in his Third Amended Complaint, Dowling has dismissed all defendants except Fort Lauderdale and Mike Freeley.  See Third Am. Compl. [DE 27].  Dowling brings a state-law false arrest claim, as to Fort Lauderdale, (Count 1), as well as a 42 U.S.C. § 1983 claim for unreasonable search or seizure, as to Freeley (Count 2).  In the instant motions, Plaintiff and Defendants each seek summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must show that "there is an absence of evidence to support the non-moving party's case."  Id. at 325.  After the movant has met its burden, the burden of production shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

### III. ANALYSIS

Both of Dowling's claims hinge on the lawfulness of his detention. In order to prevail on a false arrest claim, a plaintiff must show that he was unlawfully restrained against his will, and that the restraint was unreasonable under the circumstances. See Spears v. Albertson's, Inc., 848 So. 2d 1176, 1178 (Fla. 1st DCA 2003); Harris v. Lewis State Bank, 436 So. 2d 338, 341 (Fla. 1st DCA 1983). To succeed in a § 1983 action, a plaintiff must establish that the defendants, acting under color of law, deprived him of a right guaranteed by statute or the Constitution. Gilbert v. Sears, Roebuck and Company, 899 F.Supp. 597, 599 (M.D. Fla. 1995). In this case, it is undisputed that Freeley, as an FLPD officer, acted under color of law. Therefore, the primary issue with regard to both claims is whether the detention violated Dowling's Fourth Amendment

4

rights.

Dowling argues that the detention was unlawful because 1) Freeley did not have reasonable suspicion justifying an investigative stop; 2) Freeley had no reason to believe Dowling was armed, and so the pat-down was unauthorized; and 3) Freeley's use of handcuffs was improper under the circumstances. Defendants respond that Freeley had at least arguable reasonable suspicion to detain Dowling, and that Freeley is therefore entitled to qualified immunity.

### A. Freeley did not have arguable reasonable suspicion to detain Dowling.

Dowling asserts that the detention amounted to an arrest without probable cause, or, in the alternative, that it was an investigatory stop without reasonable suspicion. Defendants concede that it was an investigatory stop, but argue that Freeley had reasonable suspicion to detain Dowling. Under Terry v. Ohio, 392 U.S. 1 (1964), a police officer may briefly detain an individual, short of an arrest, when the officer has reasonable suspicion that the individual has committed or is committing a crime. "Although the 'reasonable suspicion' standard is less demanding than probable cause, it must be more than an 'inchoate and unparticularized suspicion or hunch.'" United States v. Simmons, 172 F.3d, 775, 779 (11th Cir. 1999) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). For the search to comply with the Fourth Amendment, the officer "must be able to point to specific and articulable facts" that justify the detention. Terry, 392 U.S., at 21.

In this case, Freeley has asserted the defense of qualified immunity, and therefore "the issue is not whether reasonable suspicion existed in fact, but whether the

officer had 'arguable' reasonable suspicion to support an investigatory stop." Jackson v. Sauls, 206 F.3d 1156, 1166 (11th Cir. 2000).  Arguable reasonable suspicion exists if a reasonable officer in the same circumstances and possessing the same information could have believed that reasonable suspicion existed.  Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002); see also Jackson, 206 F.3d at 1165 (holding that an officer who "reasonably but mistakenly [concludes] that reasonable suspicion is present is still entitled to qualified immunity.").  In determining the presence of arguable reasonable suspicion, the Court "must examine the totality of the circumstances to determine whether an officer had a 'particularized and objective' basis to support his suspicion." Whittier v. Kobayashi, 581 F.3d 1304 (11th Cir. 2009) (citing Brent v. Ashley, 247 F.3d 1294 (11th Cir. 2001)).

In the context of a drug transaction, relevant factors include the nature of the exchange, the appearance and behavior of the subject, the officer's narcotics experience, a subject's flight from the officer, and the reputation of the location for drive-up transactions.  See Grant v. State, 718 So. 2d. 238, 239 (Fla. 2d DCA 1998); Burnette v. State, 658 So. 2d 1170, 1171 (Fla. 2d DCA 1995); Illinois v. Wardlow, 528 U.S. 119, 124 (2000).  In determining reasonable suspicion, Florida courts have put particular emphasis on whether the police observed a hand-to-hand transaction between the subject and a known drug dealer.  See Burnette, 658 So. 2d at 1171 (citing Messer v. State, 609 So. 2d 164 (Fla. 2d DCA 1992), and State v. Clark, 605 So. 2d 595 (Fla. 2d DCA 1992)).  While none of these factors are dispositive,  there must be at least some objectively suspicious behavior to give rise to arguable reasonable

suspicion.  Compare Redding v. Chestnut, Case No. 5:06-CV-321, 2008 WL 4831741, at *4 (M.D. Ga. Nov. 3, 2008) (finding that an anonymous tip, along with suspect's flight from the officer, was sufficient for a finding of arguable reasonable suspicion), with Brent 247 F.3d at 1303-05 (holding that arrival from a source location for drugs, in addition to nervous behavior, is insufficiently particularized behavior to support arguable reasonable suspicion).

Here, the totality of the circumstances do not give rise to an arguable reasonable suspicion that Dowling was involved in criminal activity.  There was no hand-to-hand exchange between Dowling and the driver.  Dowling did not engage in evasive behavior or attempt to flee.  The only fact that Defendants point to in justifying Dowling's detention was that he briefly spoke with a drug suspect — about completely innocent topics — while that suspect was parked in front of a marked police vehicle.  See Def.'s Concise Statement of Material Facts in Opp'n [DE 31] ("Def.'s Concise Statement") ¶¶ 30, 33, 34; Freeley Dep., 4:24-5:11.  In his deposition, Freeley explained his actions as follows:

> Q: Why did you handcuff him?
>
> A: Because I was unsure of, you know, it was supposed to be a kilo of cocaine deal and generally drug traffickers have secondary vehicles with weapons or counter-surveillance vehicles.  So until I could ascertain exactly what and who he was, he was in handcuffs.

Freeley Dep., 7:15-21.  Defendants note that "it takes two to complete a deal."  Def.'s Concise Statement ¶ 25.  However, Defendants are unable to show that Freeley had reason to believe that Dowling was party to such a deal.  Freeley had been told that Dowling briefly spoke with a drug suspect while that suspect was stopped by a police

vehicle.  See Freeley Dep., 4:24-5:11; Daniels Dep. [DE 24-1] ¶ 4.  These facts simply do not create an arguable reasonable suspicion of wrongdoing.  Accordingly, the Court finds that the investigatory stop violated Dowling's clearly established Fourth Amendment rights.  Therefore, Freeley is not entitled to qualified immunity.

### B. Freeley lacked probable cause to frisk Dowling.

Dowling further asserts that, even if there was reasonable suspicion for the stop, Freeley did not have probable cause to frisk him.  The Court agrees.  Florida Statutes § 901.151(5) provides that when an officer temporarily detains an individual, and the officer has probable cause to believe the individual is armed, the officer may frisk the individual to the extent necessary to disclose any weapons.  Fla. Stat. § 901.151(5).  Florida courts have interpreted "probable cause" to mean "a reasonable belief on the part of the officer that a person temporarily detained is armed with a dangerous weapon."  State v. Webb, 398 So. 2d 820, 825 (Fla. 1981); see also Reynolds v. State, 592 So. 2d. 1082, 1084 (Fla. 1992) (holding that an officer may frisk individuals reasonably suspected to be armed and dangerous).  The purpose of the pat-down is to allow the officer to locate any weapons on the suspect that could be used to harm the officer or third parties.  See Terry, 392 U.S. at 29.  In this case, as described above, there was no indication — other than Freeley's general knowledge about drug deals — that Dowling was armed.  Regardless, Freeley not only frisked Dowling, but also removed Dowling's wallet and keys from his pockets, and examined his driver's license.  See PSUMF ¶¶ 23, 25, 26.  Because Freeley had no reasonable belief that Dowling was armed and dangerous, this search was unreasonable and contrary to the Fourth Amendment.

### C. Freeley's use of handcuffs was improper.

Dowling contends that Freeley had no authority to detain him in handcuffs for twenty minutes, particularly after determining that Dowling was unarmed. Defendants respond that the relatively brief use of handcuffs was justified by Freeley's suspicion that Dowling was involved in a drug transaction. Police officers may use handcuffs in the context of a Terry stop "where it is reasonably necessary to protect the officers' safety or to thwart a suspect's attempt to flee." Reynolds, 592 So. 2d, at 1084-85. However, absent other threatening circumstances, the handcuffs should be removed once the pat-down reveals that the suspect is unarmed. Id. at 1085. Here, there is no suggestion, other than Freeley's hunch, that Dowling was a danger to the officers' safety or was trying to flee. Indeed, Freeley admits that "[Dowling] was completely cooperative" throughout the encounter. Freeley Dep., 7:24-25. During that time, there were at least six officers on the scene, each of whom was armed. See PSUMF ¶ 27. Nonetheless, even after Dowling was frisked and found unarmed, he remained handcuffed for approximately twenty minutes. See PSUMF ¶¶ 25, 30. There is no reasonable interpretation of these facts that would lead to the conclusion that Dowling was a flight risk, or that he posed a danger to officer safety. Accordingly, the Court concludes that Dowling's detention in handcuffs was an unreasonable restraint under the circumstances.

### D. Fort Lauderdale is liable for the false arrest committed by Freeley.

Florida Statutes § 768.28(1) provides that municipalities may be held liable in tort for the negligent or wrongful acts of their employees. See Fla. Stat. § 768.28(1). More specifically, Florida courts have held that a city may be held liable for the intentional

9

torts committed by its officers during detention and arrest.  See Richardson v. City of Pompano Beach, 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987); see also Rance v. Jenn, Case No. 06-61002-CIV-MARRA/JOHNSON, 2008 U.S. Dist. LEXIS 99369, at *27-28 (S. D. Fla. Dec. 9, 2008) (summarizing several Florida cases in accord with Richardson).  Accordingly, because Freeley, as an FLPD officer, unlawfully restrained Dowling against his will, Fort Lauderdale is liable for false arrest and Plaintiff's Motion will be granted.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff Jeffrey Dowling's Motion for Summary Judgment [DE 23] is **GRANTED**;

2. Defendants City of Fort Lauderdale, Florida and Mike Freeley's Motion for Summary Judgment [DE 29] is **DENIED**; and

3. A jury trial to determine Plaintiff's damages is set for Monday, February 4, 2013, and calendar call is set for Thursday, January 31, 2013.  Both settings are for 9:00 A.M.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 4th day of January, 2013.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF